OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Whitten, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

In re Application of Holzhauser.
     [Cite as In re Application of Holzhauser (1993),
     Ohio St.3d      .]
Attorneys at law -- Application for admission to the bar --
     Application disapproved when record manifests a
     significant deficiency in the honesty, trustworthiness or
     reliability of the applicant.
     (No. 92-1917 -- Submitted January 13, 1993 -- Decided
March 3, 1993.)
     On Report by the Board of Commissioners on Character and
Fitness of the Supreme Court of Ohio, No. 75.
     Applicant, Gillian K. Holzhauser, graduated from law
school and, in 1987, applied to take the Ohio Bar Examination.
As part of the admissions process, applicant met with the
Admissions Committee of the Findlay-Hancock County Bar
Association ("committee").  The committee disapproved
applicant's application because of alleged improprieties
involving the assets of applicant's deceased mentor, Dorothy
Flechtner.
     Applicant appealed the committee's decision to the Board
of Commissioners on Character and Fitness of the Supreme
Court.  On April 26 and 27, 1988, applicant's appeal was heard
by a three-member panel appointed by the board.  While the
panel ultimately found the allegations to be unsubstantiated,
it also found that applicant had lied under oath during her
testimony.  Characterizing applicant's false statement as a
"blatant lie," the panel recommended that she be prohibited
from taking the examination prior to February 1991, and that
she be required to demonstrate good character at that time.
However, this court, upon applicant's request, ordered that she
be permitted to sit for the February 1989 bar examination, on
condition that her examination results be sealed until the
February 1991 results are released, and provided that applicant
demonstrates to the satisfaction of the board that she
possesses the character, fitness and moral qualifications
required for the practice of law.  42 Ohio St.3d 701, 536
N.E.2d 1175.
     Consistent with this time table, applicant took the Ohio

Bar Examination in 1989.  In January 1991, the committee, upon re-review, approved applicant's character and fitness and recommended her for admission to the practice of law.  The board adopted this recommendation.  As ordered by this court, applicant's test results remained sealed until the February 1991 results were released, at which time applicant was informed that she had not achieved a passing score.  Applicant took the examination again in July 1991.  Shortly before those results were to be released, Michael J. Malone, President of the Findlay-Hancock County Bar Association, informed the board of a second incident in which applicant allegedly perjured herself.  Because of this revelation, this court ordered that applicant's July 1991 examination results be sealed until she had been approved as to character, fitness, and moral qualifications for admission to the practice of law in Ohio.

A second panel convened on May 6, 1992 to hear the new allegation.  At that time, applicant acknowledged that she lied under oath once to the panel in 1988 and again to the common pleas court in a later civil action to which she was a party.  She explained that her initial lie arose from what she perceived was an attack on her relationship with Flechtner.  The second - - in which applicant denied having ever falsely testified before - - was a response to what applicant felt were attempts to rehash the earlier allegations and, with it, her relationship to the deceased.  Applicant, however, recognized the severity of her actions and did not attempt to excuse them.

In addition to numerous written character references, applicant also produced two mitigation witnesses.  The first, psychologist John H. Tallman, initially counseled applicant from January through May 1992.  He opined that applicant's prior behavior was an aberration and probably would not recur.  He stated that:

"* * * [Applicant] is an honest person who, under an [sic] unique set of circumstances, lied under oath on two occasions. * * *  She's confronted it, and is - - has taken full responsibility for her actions, and I think that she's followed a course of action and therapy that will allow her to be vigilant to situations that might lead to something like this.  And she's shown an integration of a corrective model that will allow her self-restraint."

Appellant's longtime friend, Kathleen Crates, also testified on applicant's behalf.  She, too, believed that applicant had felt compelled to lie on both occasions because of the perceived challenge to applicant's friendship with Flechtner.  Crates also expressed her belief that applicant had gained considerable insight into the importance of truthfulness since seeing Dr. Tallman.

The panel found that applicant had perjured herself on the occasions alleged.  It also concluded that applicant's behavior did not stem from emotional or psychiatric illness, but was instead prompted purely by "her own self-interest [and to] furthe[r] her own ends."  Continuing, the panel observed that applicant's "willingness to lie in a proceeding held to determine her character and fitness and then to lie again in a judicial proceeding demonstrates a lack of the qualities of honesty and trustworthiness so essential to a member of the legal profession."

Citing the motivation behind applicant's false testimony, the panel was not convinced that applicant had changed as a result of her meetings with Dr. Tallman. The panel, therefore, recommended that her application to practice law be denied and that she not be permitted to reapply. The board adopted the panel's findings and recommendation.

Timothy J. Ucker, for Board of Commissioners on Character and Fitness.

Charles W. Kettlewell, for applicant.

Per Curiam. Gov. Bar R. I(10)(D)(3) states in part:

"A record manifesting a significant deficiency in the honesty, trustworthiness * * * or reliability of an applicant may constitute a basis for disapproval of the applicant."

On review of the evidence before us, we find that the above-described deficiency exists in this case. Accordingly, we adopt that portion of the board's report which recommends that applicant's present application for admission to the bar be denied.

However, based on Dr. Tallman's January 7, 1993 supplemental narrative, filed in this court after the board's report, we are not persuaded that applicant completely lacks rehabilitation potential. We note that biweekly therapy is scheduled to continue through at least September 1993, and are encouraged by Dr. Tallman's interim assessment:

"She [applicant] continues to evidence excellent progress in demonstrating her ability to generalize a model for examining and correcting her responses in interactions with others. * * * She continues to evidence significant positive changes and her prognosis for enduring change is excellent.

"* * * She has accepted full responsibility for her past and present actions and continues to pursue a path of correction that is highly likely to prevent her from engaging in similar inappropriate behavior in the future. This psychologist believes that Ms. Holzhauser has demonstrated a commitment to resolve the issues calling [in]to question her fitness for admission to the bar in the state of Ohio and her ability to adhere to all ethical standards in her profession."

Based on the foregoing, we hereby order that applicant be prohibited from reapplying for admission to the bar for two years. In the interim, applicant is to continue counseling and consult with an independent psychologist or psychiatrist satisfactory to the board. The independent specialist is to periodically report to the board pursuant to a schedule established by the board. At the expiration of the two-year period, the board is to review applicant's application for admission and make a recommendation to this court. The results of applicant's July 1991 Ohio Bar Examination shall remain sealed until applicant is approved as to her character, fitness, and moral qualifications for admission to the practice of law in Ohio.

Judgment accordingly.

A.W. Sweeney, Douglas, Resnick, F.E. Sweeney and Pfeifer, JJ., concur.

Moyer, C.J., and Wright, J., dissent and would not permit applicant to reapply for admission to the bar for three years.